UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL SALAMI et al.,

Plaintiffs,

Case No. 1:20-cv-1245

v.

Honorable Hala Y. Jarbou

UNKNOWN BARTON et al.,

Defendants.

______________________________/

**OPINION**

This is a civil rights action brought by two state prisoners under 42 U.S.C. § 1983. The Court previously dismissed Plaintiff Collier for lack of prosecution because he failed either to pay his portion of the filing fee or to apply properly to proceed *in forma pauperis*, as directed by the Court. Therefore, the action proceeds with only Plaintiff Salami's claims. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept his allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Beecher and Nevins.

## Discussion

### I. Factual Allegations

Plaintiff Salami is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. *See* MDOC, Offender Tracking Information System - Offender Profile, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=879045 (last visited Apr. 6, 2021).[1] However, the events about which she complains occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan.

Plaintiff asserts that both she and the now-dismissed Plaintiff Collier have both been diagnosed as having gender dysphoria.[2] During the events Plaintiff describes in the complaint, she shared a cell at DRF with Collier. Plaintiff Salami alleges that on the morning of November 24, 2020, another prisoner at DRF named Stubbs threatened to kill Plaintiff and Collier and to engage in other forms of physical violence against them because of their gender identities. Stubbs allegedly yelled loudly through his cell door, among other things, that he would "stab y'all fagots when my door opens." (Compl., ECF No. 1, PageID.2.)

---

[1] The Court takes judicial notice of these facts under Rule 201 of the Federal Rules of Evidence. The accuracy of the source regarding this specific information "cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also* Paul F. Rothstein, *Federal Rules of Evidence* 49 (3d ed. 2019) (citing *Matthews v. NFL Mgmt. Council*, 688 F.3d 1107 (9th Cir. 2012) (taking judicial notice of statistics on the NFL website that the plaintiff played 13 games in California over 19 years); *Victaulic Co. v. Tieman*, 499 F.3d 227, 236-37 (3d Cir. 2007), as amended (Nov. 20, 2007) (finding error where a district court took judicial notice of facts stated in "a party's . . . marketing material" on an "unauthenticated" website because marketing materials often lack precise and candid information and the source was not authenticated)).

Moreover, "[t]he court may take judicial notice at *any* stage of the proceeding." Fed. R. Evid. 201(d) (emphasis added). Thus, the Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b).

[2] Plaintiff has described herself in other actions as a "feminine small-build, white, gay, transgender [and] medically detailed as Gender-dysphori[c] . . . ." (1:20-cv-1100, ECF No. 1, PageID.2.) She also has previously alleged that she suffers from gender dysphoria, identifies as female, but engages in gender nonconforming behavior that is sometimes male and sometimes female. (1:20-cv-1246, ECF No. 1, PageID.3.) On at least one occasion, she has indicated that she prefers to use feminine pronouns. (1:20-cv-1100, ECF No. 10, PageID.138.) The Court therefore uses feminine pronouns when discussing Plaintiff.

Plaintiff alleges that Stubbs yelled these threats approximately 20 feet from Defendant Barton's desk, and she contends that Barton could therefore hear Stubbs' threats. Later that morning, Plaintiff and Collier stopped Defendant Barton as he passed their cell door, and they asked for his help regarding Stubbs. Defendant Barton allegedly laughed and walked off.

Stubbs' threats transformed into action. While Plaintiff and Collier were out of their cell during the legal mail delivery, Stubbs allegedly yelled to Defendant Barton, "[p]op my door, Ima [sic] beat them fags up." (*Id.*) Plaintiff alleges that Defendant Barton, who was at the control panel at that time, complied. Stubbs' cell door allegedly opened, and he made his way toward Plaintiff and Collier brandishing a shiv. Plaintiff alleges that Defendant Barton watched Stubbs charge them with the shiv, which was plainly visible, but Barton made no effort to protect Plaintiff or Collier. Stubbs allegedly first tried to stab Collier, but Plaintiff pulled Collier out of the way. An unknown guard—but apparently not Defendant Barton—then used his Taser on Stubbs, which neutralized him. Guards placed Stubbs in handcuffs and other restraints. However, Plaintiff alleges that Stubbs continued threatening Plaintiff's and Collier's lives, and he yelled "gang codes." (*Id.*)

Following Stubbs' attack, Plaintiff and Collier allegedly sent a kite to Defendants Beecher and Nevins to request protection. Plaintiff and Collier asked Defendants Beecher and Nevins to initiate a special problem offender notice (SPON) to protect them from Stubbs. In their request, Plaintiff and Collier cited Stubbs' attack, his threats to attack them again, and his proven ability to produce a weapon. Plaintiff alleges that, at the time she filed the complaint, Stubbs' behavior continued, yet no SPON has issued against him.

Plaintiff seeks declaratory relief, injunctive relief, and damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(a)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**III. Eighth Amendment**

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-

indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show “that he is incarcerated under conditions posing a substantial risk of serious harm.” *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must “know[] of and disregard[] an excessive risk to inmate health or safety.” *Id.* at 837. “[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.” *Id.* at 842. “It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.” *Id.* at 836. “[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.” *Id.* at 844.

Upon initial review, the Court concludes that Plaintiff has alleged facts sufficient to state an Eighth Amendment claim against Defendant Barton. However, her allegations against Defendants Beecher and Nevins are a much closer call.

To determine whether Defendants Beecher’s and Nevins’ conduct violated the Eighth Amendment, the Courts must “focus on the individual official’s personal involvement, knowledge, and actions.” *Beck v. Hamblen Cnty.*, 969 F.3d 592, 600 (6th Cir. 2020) (applying the *Farmer* standard to a Fourteenth Amendment claim involving a pretrial detainee); *Bishop v. Hackel*, 636 F.3d. 757, 768 (6th Cir. 2011). Moreover, Plaintiff must establish that she had “enough personal contact” with each Defendant for that individual “to be subjectively aware of [Plaintiff’s] vulnerability to attacks . . . .” *Bishop*, 636 F.3d at 768.

Plaintiff alleges that she and Collier sent a single kite to Defendants Beecher and Nevins asking that they initiate a SPON. A single kite, without more, does not demonstrate close enough personal contact between Plaintiff and Defendants Beecher and Nevins absent some other indicia that they were purposefully indifferent to Plaintiff’s request for help. *See Reedy v. West*,

988 F.3d 907, 914 (6th Cir. 2021) (concluding that a plaintiff's two brief sixty-second explanations that another prisoner threatened him did not create sufficiently close personal contact to make the defendant subjectively aware of any risk to the plaintiff); *Clark-Murphy v. Foreback*, 439 F.3d 280, 291 (6th Cir. 2006) ("Given the brief exposures of these two defendants to Clark and given the resulting absence of evidence regarding their purposeful indifference to his health and safety needs, the claims against these defendants must be dismissed as a matter of law."). Moreover, while a SPON may not have issued, it appears that Stubbs never attacked nor had the clear opportunity to attack Plaintiff in the four weeks that passed between when she and Collier sent their kite and when they mailed their complaint. Thus, absent some indicia that Defendants Beecher and Nevins were purposefully indifferent to Plaintiff's safety, the claims against them must be dismissed. *See Clark-Murphy*, 439 F.3d at 291. Accordingly, the Court will dismiss Plaintiff's claims again them.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Beecher and Nevins will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claim against Defendant Barton remains in the case.

An order consistent with this opinion will be entered.

Dated: April 16, 2021

/s/ Hala Y. Jarbou
HALA Y. JARBOU
UNITED STATES DISTRICT JUDGE